**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

LEONARD ALLEN SCHENK,

    Petitioner,

    v.

ACTING WARDEN E.A. EARWIN,

    Respondent.

Civil Action No.:  ELH-22-271

**MEMORANDUM OPINION**

Petitioner Leonard Schenk, an inmate committed to the custody of the Federal Bureau of Prisons ("BOP"), filed a habeas corpus petition under 28 U.S.C. § 2241.  ECF 1 (the "Petition"). It is supported by exhibits.  ECF 1-1.  Acting Warden E.A. Earwin, the respondent, has moved to dismiss or for summary judgment.  ECF 4.  The motion is supported by a memorandum (ECF 4-1) (collectively, the "Motion") and exhibits.  Schenk opposes the Motion (ECF 9) and has submitted a memorandum (ECF 9-1) and exhibits.  The exhibits include two declarations from him.  ECF 9-2; ECF 9-3.  Respondent has replied (ECF 12) and submitted an exhibit.

No hearing is required to resolve the Motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, the Motion, construed as one seeking summary judgment, shall be granted and the Petition shall be denied.

## I.       Background

Schenk was convicted in the Northern District of Florida of multiple offenses.  They include conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; Exportation of Stolen Property, in violation of 22 U.S.C. § 2778(b)(2), (c); Solicitation to Commit Murder, under 18 U.S.C. § 373; Travel in Interstate Commerce in the Commission of Murder for Hire, in violation

of 18 U.S.C. § 1958; and Attempt to Kill a Witness, in violation of 18 U.S.C. § 1512(a)(1)(A). ECF 4-2 (Declaration of Michael Facey), ¶ 3.  He was sentenced in 2007 and is serving a 235-month term of imprisonment.

Petitioner challenges the validity of a disciplinary proceeding that occurred during his confinement to Federal Correctional Institution Yazoo City-Low ("FCI-Yazoo").  ECF 1.  He claims that his due process rights were violated because the disciplinary process was unconstitutional and the acts taken against him were retaliatory.  *Id*. at 6-8.

**A.    Schenk's Claims**

On December 27, 2020, Correctional Officer Lt. M. Craig wrote Incident Report Number 3481089, charging Schenk with violating Rule 307-Refusing to Obey an Order, and Rule 317-Failure to Follow Safety Regulations.  ECF 1-1 at 2.  Schenk alleges that the incident report was not signed and was falsified. ECF 1 at 7.  Specifically, he notes that the report stated he was an unidentifiable inmate but he is "a Jewish caucasian male with long dreads and blue eyes whom was in black section of television room and also picked up officer's office trash for 4 years." *Id*. Schenk contends that Officer Craig fabricated the story to cover up her attempted assault of him. *Id*.

The incident report was referred to a disciplinary hearing officer ("DHO") on December 30, 2020, but Schenk claims that he did not receive the referral and was found guilty without notice or a proper hearing. *Id*. Schenk maintains that "retaliation was committed" against him. *Id*. From December 28, 2020 to May 5, 2021, Schenck was placed in special housing, which he contends is a violation of the "90 day policy" and he "has been retaliated against at every turn." *Id*. Schenk also states that he was denied a fair and impartial hearing with witnesses and staff representation, in violation of his right to due process. *Id*. at 8. Further, he contends that his "declaration under

penalty of perjury was not rebutted point for point." ECF 1 at 8.  Schenk alleges that he did not

receive a DHO hearing and the three officers he requested as witnesses were not present at the

hearing. *Id*. And, he claims that the appeal was not judged on BOP procedures nor were the merits

addressed. *Id*.

Schenk filed a grievance regarding the incident report by providing a BP-9 to Counselor

Johnson, but the Warden at FCI-Yazoo failed to timely respond to his BP-9, in violation of BOP

policy. ECF 1 at 7; ECF 9-1 at 1.  Further, he claims that staff where the BP-9 was submitted are

required to respond to the BP-9 but did not do so and that therefore his subsequent appeals were

denied due to his failure to give the Warden an opportunity to respond.  ECF 1 at 7.

As relief, Schenk asks that the incident report be removed from his record, that he be given

credit for the programming he missed due to the incident report and retaliation, a complete "OIG"

investigation of FCI-Yazoo City and Lt. Craig, and that he be placed within 500 miles of his release

address. *Id*. at 8; ECF 9-1 at 1.[1]  He also asks for expungement of the incident report from his

record. ECF 9-1 at 1.

**B.    Respondent's Response**

Respondent states that Schenk was designated to FCI-Yazoo from January 31, 2017 to May

5, 2021. ECF 4-2 (Facey Decl.) at 3, ¶ 4; ECF 4-2 at 12. Respondent provides a factual narrative

regarding the disciplinary infraction.  He explains that on December 27, 2020, a correctional officer

---

[1] Subsequent to the filing of the Petition, Schenk was transferred to community custody in Florida, 302 miles from his intended release address, which renders moot his request to be transferred to an institution within 500 miles of his intended release address. ECF 12-1 at 2, ¶ 5; ECF 12-1 at 12. "A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990).

was conducting rounds in the television room and observed an inmate, later identified as Schenk, who, in violation of COVID-19 protocols, was not wearing a mask.  ECF 4-2 at 4, ¶ 7. The officer instructed Schenk to put his mask on and also directed Schenk to submit to a pat search. *Id.* Schenk replied, "'Stop lying on me. I did have it on.'" *Id.* Ultimately, after being told several times to wear his mask, Schenk complied.  *Id.* The officer also instructed Schenk to remove a light brown institutional linen blanket but Schenk repeatedly responded, "'I am not going to remove it.'"  *Id.*  However, he eventually complied. *Id.*

Based on the above information, Schenk was charged with violating discipline code 307-Refusing to Obey a Staff member Order, and discipline code 317-Failure to Follow Safety or Sanitation Regulations. ECF 4-2 at 4, ¶ 6; ECF 1-1 at 2. The incident report was written at 2:25 p.m. that same day, included a description of the incident, and was delivered to Schenk at 3:25 p.m. the same day. ECF 1-2 at 2; ECF 4-2 at 4, ¶ 8.  According to Respondent, the report had been signed.  ECF 4-2 at 4, ¶ 8.

On December 30, 2020, Schenk was provided a notice of hearing before the DHO and a copy of the inmate rights disciplinary hearing form.  *Id*. at 4, ¶ 9; ECF 1-1 at 4-5.  Schenck signed both forms. ECF 4-2 at 4, ¶ 10; ECF 1-1 at 4-5.

Pursuant to BOP policy, all incident reports begin with the Unit Disciplinary Committee ("UDC").  *See* https://www.bop.gov/policy/progstat/5270_009.pdf (last visited Dec. 5, 2022); BOP Program Statement 5270.09 Inmate Discipline Program (July 8, 2011).  The UDC is required to refer all 100 and 200 level disciplinary offenses to the DHO, while most 300 and 400 level offenses are handled at the UDC level. *Id.*; *see also* 28 C.F.R. § 541.7(a)(4). The UDC may impose sanctions but those sanctions may not include loss of good conduct time. *Id.* Although Schenk was served notice of a DHO hearing, ultimately staff decided that only a UDC hearing was necessary. ECF 4-2 at 4, ¶ 10.

During the UDC hearing held on December 30, 2020, Schenk told the UDC Chairperson that "Lt. Craig made a false statement." ECF 4-2 at 4, ¶ 11; ECF 1-1 at 3. The UDC Chairperson, after reviewing all of the evidence, and based on Lt. Craig's "statements and conclusion", found that Schenk committed the acts as alleged in violation of disciplinary codes 307 and 317. ECF 4-2 at 4, ¶ 12; ECF 1-1 at 3. The Chairperson sanctioned Schenk with the loss of 90 days of visitation and 90 days loss of commissary privileges. ECF 4-2 at 5, ¶ 13; ECF 12-1 at 2, ¶ 3; ECF 12-1 at 5.[2]

Misty Shaw, Paralegal at the Mid-Atlantic Regional Office of BOP, avers that Schenk has filed a total of sixteen administrative remedies since being in BOP custody. ECF 4-3 (Shaw Decl.) at 1, ¶1; *id.* at 3-4, ¶ 6. Two were UDC appeals regarding Incident Report Number 3461089. *Id.* at 4, ¶ 6.

On September 15, 2021, Schenck appealed directly to the Northeast Regional Office. ECF 4-3 at 4, ¶ 7; ECF 4-3 at 14. The appeal was rejected on October 5, 2021, because Schenk did not first file at the institutional level. *Id.*; ECF 1-1 at 13. The Central Office received Schenk's appeal on October 29, 2021, and rejected the appeal on November 17, 2021, again because Schenk had not filed at the institutional level and did not follow the Northeast Region's instructions to do so. ECF 4-3 at 4, ¶ 8; ECF 4-3 at 14; ECF 1-1 at 10.

## II.  Standard of Review

### A.

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner

---

[2] Schenk contends that he was placed only on commissary restriction rather than visitation restriction. ECF 9-1 at 4; ECF 9-2 at 2, ¶ 9. Schenk provides a receipt which is largely illegible but which he submits in support of his contention that he was placed on commissary restriction. ECF 9-4.

implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv*. *Co*., 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule

56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Petitioner has not requested discovery. Accordingly, I am satisfied that it is appropriate to address the Motion as one for summary judgment, as this will facilitate resolution of this case. In doing so, I am mindful that Schenk is self-represented.  Therefore, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).

However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).  Moreover, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.

Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

### B.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat a summary judgment motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United*

*Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Indeed, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). In other words, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Notably, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co*., 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

11

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

Respondent contends that the Petition must be denied as Schenk failed to exhaust his administrative remedies, his claims are not cognizable under § 2241 as he does not challenge the fact or length of his confinement, and the loss of 90 days of visitation does not implicate a protected liberty interest to which the right to due process would apply.

### A.  Exhaustion

Federal habeas relief is unavailable absent prior exhaustion of the claims asserted.  The exhaustion requirement applies to petitions filed pursuant to 28 U.S.C. §2241.  *See Francis v. Henderson*, 425 U.S. 536, 538 (1976) ("This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power."); *see also Timms v. Johns*, 627 F. 3d 525, 531 (4th Cir. 2010) (applying exhaustion requirements to 2241 petition challenging civil commitment).

Where, as here, BOP inmates are aggrieved by conduct of BOP staff, they are required to seek a remedy for claims through the administrative remedy process in place in the BOP facilities. *See* 28 C.F.R. 542.10 *et seq*.  The Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the

Office of General Counsel, Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Schenk contends that he filed a BP-9 at FCI-Yazoo but received no response. ECF 1; ECF 9-1. Thereafter, his appeals were rejected because BOP staff determined he had not begun the administrative process with the Warden. Schenk disputes this fact and correctly notes that where the Warden fails to timely respond, an inmate is entitled to file a next level appeal, which Schenk asserts he did. As such, the court cannot say on the record before it that Schenk failed to exhaust available administrative remedies.

**B.      Due Process**

Prisoners retain rights under the Due Process Clause. But, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). For example, there is no constitutional right to confront and cross-examine witnesses or to counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

However, in prison disciplinary proceedings, where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney

representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker.  *See Wolff*, 418 U.S. at 564-66, 592.

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F. 3d 159, 171 (4th Cir. 2019) ("the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.")  Moreover, as long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied.  *See Baxter*, 425 U.S. at 322, n.5.

Generally, federal courts do not review the accuracy of a disciplinary hearing officer's findings of fact, as long as there is some evidence in the record to support the factual findings.  *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).  The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F3d at 171-72.

Unlike good conduct credits, maintaining visiting privileges does not implicate a protected liberty interest.  Withdrawal of visiting privileges is "not a dramatic departure from accepted standards for conditions of confinement."  *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). The loss of visitation privileges is not a constitutional right that can be infringed, does not implicate a liberty interest. *See Baity v. Williams,* Civil Action No. 2:15-cv-16, 2015 WL 3965280, at *6 (N.D.W. Va. 2015) (citing *White v. Keller,* 438 F. Supp. 110, 113 (D. Md. 1977)); *see also Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the

Due Process Clause."). Similarly, the loss of commissary privileges does not implicate a liberty interest. *Gonzelez v. Zickenfoose*, Civil No. 3:CV013-2716, 2014 WL 257850, at * 2 (M.D. Pa. Jan. 23, 2014) (temporary loss of commissary, visitation, and email privileges, do not "implicate protected liberty interests as they do not result in any atypical or significant hardships in relation to the ordinary incidents of prison life.").

As such, Schenk was not entitled to the level of procedural protections outlined in *Wolff*. This is because his loss of liberty was not at stake before the UDC.

Pursuant to federal regulations, the UDC hearing is normally conducted within five working days after the incident report is issued, and an inmate may appear, make a statement on his own behalf, and present documentary evidence.  28 C.F.R. § 541.7(c)-(e).  The UDC must "consider all evidence presented" and its "decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."  28 C.F.R. § 541.7(e). Further, the inmate is to be provided a written copy of the decision.  28 C.F.R. § 541.7(c).  The UDC may not impose as a sanction loss of good conduct time credit, disciplinary segregation, FSA Time Credits, or a monetary fine.  *Id.* § 541.7(f).

Schenk received the incident report on December 27, 2020, detailing the charges against him.  ECF 1-1 at 2.  Although Schenk was served with Notice of Discipline Hearing Before the DHO and provided with a copy of the Inmate Rights at Discipline Hearing forms (ECF 1-1 at 4-5), he was not entitled to the same level of due process as that provided at DHO hearings, because no good conduct time could be revoked by the UDC.

The UDC hearing was held on December 30, 2020.  Schenk attended the hearing.  The UDC Chairman considered the statement of the reporting officer as well as Schenk's statements and, crediting the officer's statements, found Schenk guilty of the rule violations.  Thereafter,

Schenk received a copy of the UDC's decision.[3]  In short, Schenk received all of the process he was due.

### C. Cognizability

Schenk also claims that, as a result of the disciplinary proceedings, he was held in the special housing unit (SHU), transferred to another facility, and unable to earn diminution of confinement credits. Further, he claims that the disciplinary proceedings were retaliatory in nature. Even if Schenk's claims have merit, each would have no effect on the fact or length of his confinement and therefore may not be raised in the context of a § 2241 petition.

"[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A § 2241 petition is not an appropriate vehicle to challenge conditions of confinement.  *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [different] action."); *see Hill v. McDonough*, 547 U.S. 573, 579 (2006); *Wilborn v. Mansukhani*, 795 F. App'x, 157, 162 (4th Cir. 2019) (per curiam); *see also Bostick v. Weber*, DKC-21-2507, 2022 WL 622231, at *2-3 (D. Md. Mar. 2, 2022) (concluding that conditions of confinements and retaliation claims should be raised in separate civil rights action).

As the Fourth Circuit recognized in *Wilborn*, 795 Fed. App'x at 163, the majority of circuits have declined to recognize conditions of confinement claims brought under 28 U.S.C. § 2241; *see also Toure v. Hott*, 458 F. Supp. 3d 387, 398 (E.D. Va. 2020). In *Wilborn*, 795 F. App'x at 163,

---

[3] In his opposition, Schenk contends that he did not receive a copy of the UDC's decision. ECF 9-1 at 5.  However, Schenk provided the court with a copy of the decision with his Petition. *See* ECF 1-1 at 3.

the Fourth Circuit concluded that claims regarding conditions of confinement are outside the core scope of habeas corpus petitions and fall exclusively within the domain of civil rights actions. But, to my knowledge, the Fourth Circuit has not ruled in a published, binding opinion whether § 2241 is available to challenge conditions of confinement. *See Reese v. Bounds,* RDB-20-3080, 2021 WL 849108, at *6 (D. Md. Mar. 5, 2021) (citing *Wilborn,* 795 F. App'x at 163) ("noting the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have determined that conditions of confinement claims must be brought only as a civil rights action, while the D.C., Second, and First Circuits recognize them as habeas petitions.").

And, the court declines Schenk's invitation to construe his claim as a civil rights claim. ECF 9-1 at 4.  *Bivens v. Six Unknown Federal Narcotics Agents*, 402 U.S. 388, 396-97 (1971), provides a judicially created remedy to vindicate the violation of constitutional rights by federal actors in their individual capacity. The remedy in a *Bivens* action is money damages. *See Bivens*, 403 U.S. at 395-97; *see also Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) ("A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors.")  Here, Schenk does not seek monetary damages.

In any event, Schenk's claims are meritless. Assignment to segregated housing and transfers to a different prison, without more, do not involve protected liberty interests such that due process protections apply.  Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005).  Schenk has failed to allege any facts that suggest his confinement to SHU, his subsequent transfer to another prison, or his inability to participate in programming amounted to the imposition of "atypical and significant hardship within the

correctional context." *Wilkinson*, 545 U.S. at 224 (finding a liberty interest implicated where inmates were assigned to a super-maximum security prison where almost all human contact was prohibited, communication between cells was forbidden, exercise was limited, and inmates were exposed to light 24 hours a day).

Further, retaliation claims brought pursuant to *Bivens* are not cognizable claims. Indeed, the Supreme Court has extended *Bivens* beyond the Fourth Amendment to cover just two new contexts: (1) permitting a federal prisoner to pursue a *Bivens* claim raising an Eighth Amendment claim of deliberate indifference to serious medical needs, *see Carlson v. Green*, 446 U.S. 14, 18–19 (1980); and (2) permitting an employee of a member of Congress to bring a *Bivens* action alleging gender discrimination under the Due Process Clause of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 248–49 (1979). "[E]xpanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1857 (2017).

Notably, the Supreme Court has never recognized a *Bivens* remedy based on the First Amendment. *See Earle v. Shreves*, 990 F.3d 774, 779 (4th Cir. 2021). And, the Fourth Circuit has specifically declined to extend *Bivens* to include a First Amendment retaliation claim. *Id.* at 781.

Moreover, as the Fourth Circuit just noted, "in the 42 years following *Carlson* . . . the Court has 'consistently rebuffed' every request . . . to find implied causes of action against federal officials for money damages under the Constitution." *Tate v. Harmon*, ___ F.4th ___, 2022 WL 17588046, at *3 (4th Cir. Dec. 13, 2022) (citing *Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022); *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)); *see also*, *e.g.*, *Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021); *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019).

**IV. Conclusion**

Having found no basis for the claims asserted, Respondent's Motion (ECF 4), construed as a motion for summary judgment, shall be granted by separate Order, which follows.  The Petition for Writ of Habeas Corpus shall be denied.


December 13, 2022                                        /s/
Date                                            Ellen L. Hollander
                                                United States District Judge